UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD MICHAEL DASPIN,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW DASPIN and KAREN POLANCO,<br><br>Defendants. | Case No. 2:24-cv-11501 (MEF) (SDA)<br><br>Hon. Stacey D. Adams<br><br>**OPINION AND ORDER APPOINTING PRO BONO COUNSEL FOR PLAINTIFF**<br><br>November 21, 2025 |

**THIS MATTER** comes before the Court *sua sponte* to consider the appointment of pro bono counsel for *pro se* Plaintiff Edward Michael Daspin ("Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully reviewing the filings in this matter and the in person appearances of the parties before the Court on July 24, 2025, the Court hereby appoints Tamires M. Oliveira, Esq.[1] of Greenbaum Rowe Smith & Davis LLP as pro bono counsel for Plaintiff pursuant to 28 U.S.C. § 1915(e)(1).

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff commenced this action on December 30, 2024 by filing a Complaint against Defendants Matthew Daspin ("Matthew") and Karen Polanco ("Polanco") (together, "Defendants"). (ECF No. 1). Between the date the Complaint was filed and July 24, 2025, when the Rule 16 initial pretrial scheduling conference occurred, Plaintiff filed twenty separate documents on the docket. (ECF Nos. 3-14, 16, 17, 19, 20, 26, 27, 30, 32). In that time, Plaintiff also filed an amended complaint without leave (ECF No. 21), an untimely motion to compel

---

[1] District of New Jersey Admission pending.

1

without leave (ECF No. 23), and a premature application for summary judgment with 410 pages of disorganized exhibits (ECF No. 30). Since appearing at the conference, and despite the Court's explicit instructions as to how the matter would proceed moving forward, Plaintiff made an additional eleven filings including several attempts to amend his Complaint. (ECF Nos. 34-39, 42, 44, 46-48).

Although difficult to discern, the Complaint appears to allege a pattern of elder abuse of Plaintiff by Matthew and Polanco. Plaintiff attempted to file an order to show cause with temporary restraints seeking the return of his golden retriever, Abigail, and $112,000 that Plaintiff claims Matthew owes him. (ECF No. 1 at 13, 16-17 (filed under seal)).[2] Plaintiff is an eighty-six-year-old man who is hearing impaired and takes thirty prescriptions daily. (*Id.* at 14.). Matthew is Plaintiff's nephew and Polanco is Matthew's girlfriend. (*Id.* at 45). Plaintiff claims Matthew owes him $100,000 from a loan and $12,000 for oil and electricity bills Matthew charged to him. (*Id.* at 9, 15). Plaintiff claims on June 25, 2023, Matthew fraudulently signed Plaintiff's name to a bill of sale for Abigail and Plaintiff's SUV to Matthew. (*Id.* at 9, 32). According to Plaintiff, in this bill of sale was a statement that Plaintiff could keep Abigail with him until he died. (*Id.* at 9). Plaintiff claims that this bill of sale was fake and intended to make Plaintiff judgement proof so he could not be sued. (*Id.* at 14-15). Plaintiff claims that even if it were a valid bill of sale, Matthew breached the contract by taking Abigail from him before he died and refusing to return her. (*Id.*). Plaintiff states Matthew falsely told him that Abigail drowned in the ocean in Puerto Rico but in reality, she survived. (*Id.* at 2). Plaintiff alleges that he will have a heart attack and die if Abigail is not returned. (*Id.* at 16).

---

[2] The Court references the ECF page numbers as opposed to the page numbers contained within the document as they are scattered, out of order, and missing on some pages.

Defendants filed an Answer on April 1, 2025, which contained a general denial, several affirmative defenses, and fourteen factual statements.[3] (ECF No. 18). Defendants allege that Polanco is Matthew's girlfriend, has no relationship with Plaintiff and there are no allegations against her in the Complaint. (*Id*. ¶¶ 3, 15). Significantly, the Answer states that Matthew had power of attorney over Plaintiff since 2020. (*Id*. ¶ 4). Matthew asserts that he took care of Plaintiff, including managing his bank account so it could be used "for the health and well-being of his uncle [Plaintiff] who [could] no longer manage his own affairs." (*Id.* ¶ 6). Defendants allege that, as of 2020, Plaintiff had approximately $87,534.20 in assets, which Matthew used to pay Plaintiff's bills "including rent, moving expenses, funeral home, dental, eyes, hearing aids, hospital, etc." (*Id*. ¶¶ 5, 8). Defendants claim Plaintiff did not return to his rented home for several months due to health issues, refused Matthew's attempts to place him in a nursing home, and created dangerous conditions at home by leaving the gas on. (*Id*. ¶¶ 10-12). Defendants contend that Plaintiff was not able to take care of himself upon release from the health care facility where he was residing and cannot return to the premises "he rented from [Matthew]." (*Id.* ¶ 14). Finally, Matthew claims he is owed $17,956 from Plaintiff for out-of-pocket expenses including unpaid rent. (*Id.* ¶ 13).

The Court conducted an initial pretrial scheduling conference on July 24, 2025. (ECF No. 31). Plaintiff had difficulty hearing and articulating himself. Nevertheless, the Court was able to discern the following with respect to the parties' positions. Plaintiff claims he practically raised his nephew, Matthew, including paying for his college. Matthew was like a son to Plaintiff, and Plaintiff thought he could trust him. After Plaintiff lost his wife, experienced some business hardships, and sold his home, he had a finite amount of assets remaining, roughly $120,000.

---

[3] No counterclaim was asserted so it was not necessary for Defendants to set forth any factual assertions in their Answer. Nevertheless, they did so.

Plaintiff entrusted the money to Matthew in exchange for Matthew's promise to allow Plaintiff to live in an apartment on one of Matthew's properties for the rest of his life, pay his bills, and take care of him. Instead, Plaintiff alleges Defendants took his money and removed him from the residence while Plaintiff was hospitalized for several months. Plaintiff claims he is now penniless, has nowhere to live, and is staying with a friend. Plaintiff also claims that Matthew took his Social Security checks. Finally, Plaintiff alleges that, while he was hospitalized, Defendants took his beloved dog, Abigail, and Plaintiff's car. When Plaintiff demanded the dog be returned, Defendants told him she drowned in Puerto Rico, where Defendants maintain a residence. Plaintiff claims this is untrue because Defendants later offered to return the dog if Plaintiff dropped this lawsuit.

For his part, Matthew admitted during the conference that he does not actually have a signed power of attorney for his uncle—despite his specific allegations to the contrary in the Answer. Notwithstanding this misrepresentation in a court pleading, Matthew claims he cared for his uncle and tried to manage his affairs with the $120,000 Plaintiff gave him from the sale of his home. Matthew rented Plaintiff an apartment at a property he owns. Matthew claims he supported his uncle using the $120,000 for five years but, between rent, food, medical and other expenses, the money eventually ran out. Matthew advised he can provide a full accounting of expenses paid and how the money was used. Matthew claims he never promised to support his uncle indefinitely or allow him in to stay in the apartment rent-free for the rest of his life. Matthew explains that Plaintiff was hospitalized with health issues for several months, and he cared for the dog during this time period. Unfortunately, the dog drowned in Puerto Rico, so she could not be returned upon Plaintiff's release from the medical facility. While Plaintiff was hospitalized the rent was not being paid so, eventually, Matthew re-leased the apartment.

After reviewing Plaintiff's filings, the Court is concerned about Plaintiff's ability to manage this litigation given his age, hearing impairment, and apparent inability to understand basic Court procedures.

## **LEGAL STANDARD**

Generally, there is no right to counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) ("The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants."); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, "[w]here an unrepresented Plaintiff in a civil suit is indigent, and where good cause exists for the appointment of pro bono counsel under 28 U.S.C. 1915(e)(1), the District Court has discretion and authority to appoint pro bono counsel even in the absence of a specific motion to do so." *Brandt v. Ganey*, No. 06-cv-5639 (FLW), 2008 WL 5416393, at *1 (D.N.J. Dec. 22, 2008) (citing *Williams v. Hayman*, 488 F. Supp. 2d 446, 447 (D.N.J. 2007)). "The Court has broad discretion to determine on a case-by-case basis whether to appoint counsel to a *pro se* plaintiff." *Role v. Local 3 P.M. & S.E. Union*, No. 08-cv-6011, 2011 WL 52524, at *1 (D.N.J. Jan. 6, 2011) (citing *Tabron*, 6 F.3d at 157). As a threshold matter, in determining whether to appoint counsel, the Court must first analyze the substance of the underlying claims. *See Tabron*, 6 F.3d at 155. Only after determining that a plaintiff's claim has merit in fact and law should the Court proceed to consider and evaluate the factors outlined in *Tabron*. *See id.* at 156. These factors include whether:

> (1) the *pro se* party lacks the ability to present an effective case without an attorney; (2) the legal issues are complex or, the ultimate legal issues are not complex, but the *pro se* party lacks the familiarity with the rules of evidence and discovery needed to translate understanding of the law into presentation of the proofs; (3) factual investigation will be necessary and the party is not adequately able to pursue said investigation; (4) the case is likely to turn on credibility determinations; (5) the case will require expert

5

>testimony; and (6) the party is unable to attain and afford counsel on his/her own behalf.

*Pinto v. Gavilanez*, No. 16-cv-5201, 2017 WL 1051187, at *1-2 (D.N.J. Mar. 20, 2017) (citing *Parham*, 126 F.3d at 457; *Tabron*, 6 F.3d at 155-56). Although these factors are meant to guide the Court in making its determination, they are not exhaustive, and the Court may consider any other factor it deems relevant. *Tabron*, 6 F.3d at 157. Furthermore, the Court need not find that each of the *Tabron* factors is met before appointing pro bono counsel. *Brandt*, 2008 WL 5416393, at *11.

## ANALYSIS

The Court first considers as a threshold matter whether Plaintiff's claims have "some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155). For purposes of this decision only, the Court will assume, without deciding, that Plaintiff's claims have some facial merit. *See Anderson v. Salerno*, No. 19-cv-19926 (BRM) (JAD), 2021 WL 11585761, at *1 (D.N.J. Feb. 11, 2021) (assuming solely for purposes of a pro bono motion that a plaintiff's case has some arguable merit in fact and law); *Muslim v. D'Ilio*, No. 15-cv-05796 (PGS) (DEA), 2018 WL 4522048, at *4 (D.N.J. Sept. 21, 2018) (same). While the written documents submitted by Plaintiff are difficult to understand, when he appeared on the record he more clearly articulated the basis for his claims against Defendants as described above. Affording Plaintiff the benefit of the doubt for purposes of this application only, he alleges that his trusted nephew took advantage of his advanced age, poor health, and potential senility to take his money and eventually put him out on the streets. While unartfully pled, if Plaintiff's claims are true, he pleads a classic case of elder abuse. Given Matthew's representation in his first pleading that he had power of attorney over his uncle, only to later recant this statement on the record, the

Court has reason to find that Plaintiff's claims may have some facial merit. The Court therefore turns to the *Tabron* factors.

First, the Court must consider the ability of the plaintiff to present his case without the assistance of counsel. *See Tabron*, 6 F.3d at 156. The first *Tabron* factor is the most significant factor. *L.A. v. Hoffman*, 144 F. Supp. 3d 649, 678 (D.N.J. 2015). In considering the first *Tabron* factor—a plaintiff's ability to present one's own case—the court should "review the plaintiff's education, literacy, prior work experience and prior litigation experience." *Christy v. Robinson*, 216 F. Supp. 2d 398, 409 (D.N.J. 2002) (citing *Tabron*, 6 F.3d at 156). "[A] plaintiff's own cogent submissions to a court may indicate that an individual has an ability to effectively pursue a case." *Tucker v. Hewlett-Packard, Inc.*, No. 14-cv-4699 (RBK) (AMD), 2018 WL 11467978, at *2 (D.N.J. Feb. 20, 2018) (citing *Lozada v. Casale*, No. 13-cv-2090 (FSH) (MAH), 2013 WL 6635846, at *2 (D.N.J. Dec. 16, 2013) (discussing how an individual's clear, typed submission to the court indicated his sufficient ability and access to resources to pursue his case)). Here, Plaintiff's submissions are the opposite of cogent; they are almost incomprehensible. All of Plaintiff's submissions to the Court are unclearly written, improperly filed, disorganized, and impossible to follow. Plaintiff was unable to follow basic instructions of the Court even after appearing before the undersigned and being provided with detailed instructions about next steps. For this reason, Plaintiff appears to be unable to understand the law or properly present his case, and the first factor weighs in favor of appointing pro bono counsel.

The complexity of the legal issues involved, the second *Tabron* factor, also leans in favor of appointing pro bono counsel. Here, Plaintiff claims that Defendants took his money in exchange for certain promises that were not delivered, which might involve claims for breach of contract or implied contract, unjust enrichment or even fraud. He also claims they took his dog and have

7

refused to return her, lying about her death. While this case is not overly complex, resolving these issues will require analysis of contract law and conducting an accounting of expenses paid, among other things. The Third Circuit has found that "even where the ultimate [legal] issue appears relatively simple . . . [s]implicity in the allegation supporting the claim does not translate into simplicity in the presentation of the claim." *Montgomery*, 294 F.3d at 502 (internal quotations omitted); *see also Tabron*, 6 F.3d at 156 (instructing that the difficulty of the legal issues must be considered "in conjunction with . . . the plaintiff's capacity to present his own case"). Although the issues presented in this matter may appear relatively simple, viewing them in conjunction with Plaintiff's capacity to present his case supports the appointment of pro bono counsel. These claims would be difficult for any *pro se* plaintiff without formal legal training to litigate, but the inability of Plaintiff to litigate this case is enhanced given his age and inability to understand legal procedure and applicable law. Thus, the second *Tabron* factor weighs in favor of the appointment of pro bono counsel.

Turning next to the third *Tabron* factor, the Court must examine "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation." *Tabron*, 6 F.3d at 156 (citations omitted). Here, discovery is ongoing following the initial scheduling conference, therefore factual investigation will be necessary. Whether or not Matthew promised to care for Plaintiff and/or improperly used his money are issues of fact. Based on Plaintiff's prior submissions to this Court and given his age and current health, Plaintiff appears unable to properly investigate his claims or engage in meaningful discovery. Indeed, Plaintiff had to enlist the help of another individual to assist with his previous Court filings. (ECF No. 6). *Romero v. Ahsan*, No. 13-cv-7695 (FLW), 2015 WL 5455838, at *7 (D.N.J. Sept. 16, 2015) (finding this fact weighed in favor of appointing counsel when "the amount of factual investigation

8

is likely beyond Plaintiff's capacity"). Thus, the third factor supports the appointment of pro bono counsel.

The fourth *Tabron* factor measures the degree to which "a case is likely to turn on credibility determinations." *Tabron*, 6 F.3d at 156. Cases that turn on credibility determinations are those that are dependent on witness testimony. *Mestre v. Garden Homes Mgmt. Corp.*, No. 16-cv-3231 (NLH) (AMD), 2018 WL 11587727, at *3 (D.N.J. June 12, 2018). Here, the case will likely turn on credibility determinations because of the nature of the allegations. The parties dispute whether Matthew was authorized to manage Plaintiff's finances, properly used Plaintiff's money, promised to house Plaintiff for the remainder of his life, was permitted to take Plaintiff's dog, and whether the dog is dead. Many of these disputes will turn on the testimony of the parties themselves, as opposed to documentary evidence. Therefore, the fourth factor supports the appointment of pro bono counsel.

The fifth factor, whether "the case will require testimony from expert witnesses," also weighs in favor of the appointment of pro bono counsel. *Tabron* 6 F.3d at 156. Since Matthew indicated he will provide an accounting of how Plaintiff's money was spent, an accounting or economic expert will likely be retained.

Finally, the Court considers the sixth *Tabron* factor, Plaintiff's financial ability to attain and afford counsel. *See Tabron*, 6 F.3d at 156. Plaintiff's request to proceed *in forma pauperis* was denied as moot because he paid the $405.00 filing fee. (ECF No. 51). However, Plaintiff advised the Court under oath during the initial scheduling conference that he was penniless, that Matthew had taken what little was left of his assets, and that he was currently homeless and staying at a friend's place. He also indicated that his sole source of income is Social Security. Although Plaintiff came up with the funds to pay the filing fee, that alone is not indicative of financial ability

9

to retain counsel to litigate this case. The fact that Plaintiff has proceeded without counsel thus far strongly suggests he cannot afford it. Therefore, the Court finds this factor weighs in favor of appointing pro bono counsel

In sum, all of the six *Tabron* factors weigh in in favor of appointing pro bono counsel for Plaintiff. The Court further finds that the administration of this litigation will greatly benefit from the efficiency and clarity that would result from appointing an experienced attorney as counsel for Plaintiff. *See Role*, 2011 WL 52524, *2.

## CONCLUSION

For the foregoing reasons, the Court hereby finds that the appointment of pro bono counsel to represent Plaintiff is appropriate in this matter. The Court hereby appoints Tamires M. Oliveira, Esq. as pro bono counsel for Plaintiff. Accordingly:

**IT IS**, on this 2**1st** day of **November, 2025**, for good cause shown, hereby **ORDERED** as follows:

1. Tamires M. Oliveira, Esq. is hereby appointed as pro bono counsel for Plaintiff in this matter.

2. Plaintiff's Motion to Amend filed at ECF No. 48 is hereby ADMINISTRATIVELY TERMINATED to allow pro bono counsel to meet with Plaintiff and familiarize herself with the underlying facts, at which time leave is granted for Plaintiff's counsel to file a motion to amend the complaint on or before **December 31, 2025**.[4]

---

[4] The parties and counsel are advised to familiarize themselves with the undersigned's judicial preferences, which set forth the procedure for amendments of pleadings. Namely, Plaintiff's counsel shall provide a draft of the proposed amended complaint (in clean and red-lined form) to Defendants' counsel. If Defendants' counsel consents to the amendment, then a motion is not required, and Plaintiff's counsel may file the amended complaint with a cover letter indicating Defendants' consent.

3. There will be a status conference on **January 6, 2026 at 3:00 p.m.** before Magistrate Judge Adams via video conference. Microsoft teams login credentials will be provided.

4. The Clerk of Court shall terminate the motion at ECF No. 48.

**SO ORDERED.**

<u>*/s/ Stacey D. Adams*</u>
Stacey D. Adams
United States Magistrate Judge

cc:  Hon. Michael Farbiarz, U.S.D. J.
 Tamires M. Oliveira, Esq. (via regular mail and email)
 All parties (Plaintiff via regular mail and Defendants' counsel via CM/ECF)